UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                        No. S2 15-CR-854-LTS-1

ALI HAMILTON,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Defendant Ali Hamilton ("Hamilton" or "Defendant") is charged, in the above-captioned indictment, with: participation in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); assault and attempted murder in aid of racketeering activity in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2 (Counts Two and Three); participation in a narcotics conspiracy in violation of 21 U.S.C. § 846 (Count Four); a firearms offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 (Count Five); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Six). Prior to the filing of the above-captioned Second Superseding Indictment, Defendant moved for a) severance of the trial of Count Three of the S1 Superseding Indictment, which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), from the trial of Count One, which charged him with participation in a narcotics conspiracy in violation of 21 U.S.C. § 846, and Count Two, which charged him with a firearms offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, of the S1 Superseding Indictment; and b) the suppression of property recovered, including a gun, a bag of marijuana and two cellular telephones, and statements made,

during his arrest and interrogations on October 31, 2015. This Memorandum Opinion and Order addresses Defendant's motion.

The Court held an evidentiary hearing on January 18, 2017. At the suppression hearing, the Government presented the testimony of New York City Police Department ("NYPD") Sergeant Douglas Soriano ("Sergeant Soriano") and NYPD Officer Angel Vazquez ("Officer Vazquez"). Defendant submitted an Affidavit in support of the motion in advance of the hearing (Docket Entry No. 45), and the parties submitted memoranda both prior to and following the hearing in support of their positions. The Court heard oral argument on March 27, 2017.

The Court observed each suppression hearing witness carefully and has reviewed thoroughly the evidence and the pre- and post-hearing submissions of the parties, including the Defendant's affidavit and the parties' stipulation concerning the testimony of another potential witness. This Memorandum Opinion and Order sets forth the Court's findings of fact and conclusions of law. To the extent any finding of fact includes conclusions of law it is deemed a conclusion of law, and vice versa. For the following reasons, the suppression aspect of Defendant's motion is denied and the severance aspect of Defendant's motion is denied without prejudice to renewal.

FINDINGS OF FACT

The following facts were established by a preponderance of the credible evidence. At approximately 10:00 p.m. on the night of October 31, 2015, uniformed NYPD police officers who were members of an anti-crime patrol team were driving in an unmarked car in the vicinity of a building located at 1526 Beach Avenue in the Bronx, New York (the "Building"). There had previously been multiple 911 and 311 calls regarding drinking, drug use, and drug sales in

front of and inside the Building; a 311 complaint concerning loud music at the Building was received that same evening. The officers were familiar with the Building because the stretch of Beach Avenue on which it is located was "one of the more problematic streets" that the officers routinely patrolled. From their car, the officers observed a group of individuals congregated in front of the Building and perceived that one or more members of the group may have been drinking.[1]

One of the officers, Sergeant Soriano, stepped out of the car to speak with the group of individuals. When he emerged from the car, however, he observed that a door to the Building was open and decided to hold the door open to facilitate police entry into the Building because, on prior occasions, individuals had denied police access to the Building by running inside and locking the door.

As he approached the door, Sergeant Soriano observed Hamilton coming down the hallway of the Building towards him and, after the two men had made eye contact, Sergeant Soriano observed Hamilton making a gripping movement at his waist which, from the way Hamilton's hand was positioned, Sergeant Soriano perceived as the gripping of a gun. Hamilton then turned around. He ignored and did not respond to the officer's repeated commands to stop. Hamilton proceeded to walk quickly to the back of the hallway and up a set of stairs to a landing to avoid engaging with Sergeant Soriano. Sergeant Soriano followed Hamilton to the stairs, took cover behind the frame of a door and continued ordering him to stop and turn around. The officer perceived that Hamilton, who had his back to him, was moving an object in his waistband

---

[1] The evidence suggests that there may not actually have been drinking. The congregating of people outside of a location known to be one where incidents of criminal behavior and disruptive conduct often occur, and the officers' impression that drinking was taking place, nonetheless provided ample rationale for their stop outside the Building.

and, suspecting reasonably that Hamilton was armed and dangerous, Sergeant Soriano drew his firearm to reinforce his repeated commands to Hamilton to stop and turn around. While he did so, Sergeant Soriano observed Hamilton making furtive movements in his jacket pocket. Hamilton thereafter turned around, putting his hands up. He then quickly reached into a jacket pocket and pulled out dice, saying something to the effect of, "Officer, it's just dice." The area from which he removed the dice was distinct from the waistband area in which Sergeant Soriano believed that Hamilton had gripped a gun.

Hamilton then descended to the base of the stairs and another police officer seized him. Sergeant Soriano left Hamilton with that officer, Lieutenant Jeremy Scheublin, momentarily to unlock the Building door to allow additional officers to enter, and then returned to the base of the stairs. Sergeant Soriano reached for Hamilton's waistband, and Hamilton attempted to evade the officer's grasp by bending over into a hunched position. Sergeant Soriano felt an object in Hamilton's pants, perceiving it to be a firearm, based on its "L-shape." Hamilton struggled and the police officers took him to the ground, handcuffed him, and rolled him over onto his back. Sergeant Soriano lifted Hamilton's pants and recovered a firearm from Hamilton's groin area. A bag of marijuana and two cellular telephones were also recovered from Hamilton's person.

When Sergeant Soriano removed the firearm, Hamilton made a statement to the effect of, "You guys don't understand, people want me dead." The statement was not made in response to questioning by Sergeant Soriano or any other police officer.

Hamilton was then arrested, taken into custody, and interviewed by detectives at the NYPD's 43rd Precinct after being informed of his <u>Miranda</u> rights.

CONCLUSIONS OF LAW

"On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a preponderance of the evidence, the legality of the actions of its officers." United States v. Peterson, No. 12CR409, 2012 WL 4473298, at *6 (S.D.N.Y. Sept. 28, 2012). Here, Hamilton tendered an affidavit in which he asserted, in substance, that the police stopped, searched, and arrested him when he had done nothing to provide reasonable suspicion for a stop or probable cause for an arrest.

*Terry Stops and Protective Searches*

"The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 134 S. Ct. 1683, 1687 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417–418 (1981); citing Terry v. Ohio, 392 U.S. 1, 21–22 (1968)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" Id. (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). "The standard takes into account 'the totality of the circumstances–the whole picture.'" Id. (quoting Cortez, 449 U.S. at 417). "Although a mere 'hunch' does not create reasonable suspicion, Terry, 392 U.S. at 27, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)).

As explained above, Sergeant Soriano perceived from his initial observation of Defendant in the hallway, based on Hamilton's movements and the position of Hamilton's hand

in his waistband area, that Defendant had a gun in his waistband, Hamilton ignored and did not respond to Sergeant Soriano's repeated commands to stop, and he walked away from the officer quickly. These actions provided further ground for suspicion of illegal activity and, by the time Sergeant Soriano had further observed Hamilton apparently moving an object in his waistband while he had his back to the officer, Soriano had "a particularized and objective basis for suspecting" the Defendant was armed and dangerous, or engaging in "criminal activity." See Navarette, 134 S. Ct. at 1687. Based on the "totality of the circumstances," Sergeant Soriano had reasonable suspicion to stop the Defendant under the Terry line of cases, and the seizure of the Defendant at the base of the stairs constituted a Terry stop.

After stopping a suspect on the basis of reasonable suspicion, an officer is permitted to conduct

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry, 392 U.S. at 27 (citations omitted). The fact that Sergeant Soriano drew his weapon while Hamilton was still on the stairs did not escalate the encounter into an arrest. "[Although under ordinary circumstances, drawing weapons and using handcuffs are not part of a Terry stop, intrusive and aggressive police conduct is not an arrest when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." United States v. Vargas, 369 F.3d 98, 102 (2d Cir. 2004) (internal quotation marks and brackets omitted) (citation omitted).

Here, based on Hamilton's non-compliance with the officer's repeated commands to stop, his rapid walking away from the officer, and the gripping movements Hamilton made at his waistband, a reasonably prudent man in the circumstances in which Sergeant Soriano found himself would be warranted in the belief that his safety or that of others was in danger. See Terry, 392 U.S. at 27. Sergeant Soriano's drawing of his firearm, prior to Lieutenant Scheublin's seizure of the Defendant, did not constitute an arrest because it was "a reasonable response to [his] legitimate safety concerns." See Vargas, 369 F.3d at 102. The resulting seizure of the gun from the Defendant's groin area only occurred after Sergeant Soriano had observed the Defendant's repeated gripping movements and felt the gun, identified by its shape, in the Defendant's pants, despite the Defendant's attempts to evade the officer's reach by bending over into a hunched position. The Defendant's conduct, including his crouching over to evade the officer, caused the officer to form "specific reasonable inferences" that he was "entitled to draw from the facts in light of his experience;" those inferences gave the officer "reasonable suspicion." See Terry, 392 U.S. at 27. The protective search of the Defendant resulting in the recovery of the firearm was authorized by Terry and, as explained infra, the arrest and search incident pursuant thereto in which the other objects were recovered were therefore lawful.

*Probable Cause*

The Defendant asserts that his arrest and the search incident thereto were illegal because the Government did not have probable cause at the time he was arrested. "[T]he general rule [is] that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Michigan v. Summers, 452 U.S. 692, 700 (1981). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

Defendant's contention that he was arrested and searched unlawfully turns principally on two propositions, neither of which is supported by the law or the credible evidence. First, Defendant asserts that the police officers had no ground for reasonable suspicion, and thus no basis for even a Terry stop and protective frisk. As shown above, Sergeant Soriano did have reasonable suspicion and was justified in reaching for Defendant's waistband, where Soriano suspected Defendant had a weapon. Second, Hamilton argues that he was actually arrested while he was still on the stairs and before the gun was uncovered and seized – when Sergeant Soriano unholstered his gun and instructed Hamilton to stop and turn around. This premise is incorrect as a matter of law and of fact. Law enforcement personnel are permitted to make brief investigative stops on the basis of reasonable suspicion. See Navarette, 134 S. Ct. at 1687. In the course of those stops, which are unquestionably seizures but are limited in time and do not rise to the level of full-blown arrests, officers may take reasonable protective precautions. See Terry 392 U.S. at 27. Here, the unholstering of the gun and commands to stop and turn around were reasonable in light of the Defendant's hand movements

in his waistband area, where Soriano reasonably suspected Defendant had a gun, and Defendant's refusals to obey Soriano's earlier commands to stop. The brief physical restraint of the Defendant by Lieutenant Scheublin while Sergeant Soriano admitted additional officers to the building was likewise a seizure that did not rise to the level of an arrest.

Defendant was arrested after the protective frisk, which he resisted, revealed that he did indeed have a gun in his possession. It was at that point that the officers had probable cause to arrest him, take him into their custody and conduct a lawful search incident to the arrest.

*Exclusionary Rule and "Fruit of the Poisonous Tree"*

The Defendant argues, based on the erroneous proposition that Defendant was arrested and searched without probable cause, that the firearm, marijuana, cellphones, and any other property recovered from the Defendant's person and clothing, as well as the statement the Defendant made to the police officers upon recovery of the firearm, should be suppressed pursuant to the exclusionary rule and the "fruit of the poisonous tree" doctrine.

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search . . . and of testimony concerning knowledge acquired during an unlawful search. Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." Murray v. United States, 487 U.S. 533, 536-37 (1988) (internal citations and quotation marks omitted).

For the reasons discussed above, both the search and arrest of the Defendant were lawful. The exclusionary rule therefore provides no basis for the suppression of the items seized

at the time of Defendant's arrest.  Nor is there a proper basis for the exclusion of Defendant's statements.  To the extent Defendant contends that any statements were the fruit of an unlawful arrest and search, Defendant's legal premise is unfounded.  To the extent Defendant contends that the statement he made upon discovery of the firearm was taken in violation of his Fifth Amendment right not to be compelled to testify against himself, the credible evidence regarding the encounter does not support his position.  As explained above in the Court's findings of fact, the statement was spontaneous and was not the product of police interrogation.

The Court, having considered carefully the totality of the circumstances, finds that the Government has met its burden of proving by a preponderance of the evidence "the legality of the actions of its officers."  See United States v. Peterson, No. 12CR409, 2012 WL 4473298, at *6 (S.D.N.Y. Sept. 28, 2012).

Accordingly, Defendant's motion to suppress the property recovered and statements made in connection with the Defendant's October 31, 2015, arrest is denied.

*Severance*

The Defendant requests that the trial of his felon in possession of a firearm charge (Count Three of the S1 Superseding Indictment and Count Six of the S2 Superseding Indictment) be severed from the trial of Counts One and Two of that S1 Indictment (narcotics conspiracy and the use of a firearm in connection with the same, as charged in Counts Four and Five of the S2 Indictment).  In light of the filing of the S2 Indictment, which adds racketeering-related charges, the parties have requested that the Court defer a determination of the severance aspect of the motion.  That aspect of the motion is therefore denied without prejudice to renewal.

## CONCLUSION

For the foregoing reasons, Defendant's motion to suppress property recovered and statements made during his arrest and interrogations on October 31, 2015, is denied. The severance aspect of Defendant's motion is denied without prejudice to renewal.

The Court will hold a pretrial conference in this matter on June 15, 2017, at 12:30 p.m. in Courtroom 17C.

This Memorandum Opinion and Order resolves Docket Entry Number 43.

SO ORDERED.

Dated: New York, New York
      May 24, 2017

          /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      United States District Judge